IN THE UNITED STATES DISTRIC COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| TALI WASHBURN,<br><br>    Plaintiff,<br><br>vs.<br><br>JOE LAVIGNE, *et al.*,<br><br>    Defendants. | Case No. 24-CV-67-LTS-EM<br><br>**BRIEF IN SUPPORT OF JOE LAVIGNE'S MOTION TO SET ASIDE ENTRY OF DEFAULT AGAINST JOE LAVIGNE** |

Defendant, Joe Lavigne ("Lavigne"), by and through counsel, hereby requests this Court set aside the Entry of Default pursuant to Fed.R.Civ.P. 55(c) and states as follows:

1. Washburn filed her *Pro Se Compliant with Jury Demand* ("Complaint") against Lavigne and other Defendants on July 12, 2024. (Doc. No. 2).

2. Washburn filed her *First Amended Complaint & Demand for Jury Trial* ("Amended Complaint") against Lavigne and other Defendants on September 2, 2024. (Doc. No. 5).

3. Lavigne was served with the summons, Complaint, and Amended Complaint on November 7, 2024. (Doc. No. 37).

4. After receiving the summons and Amended Complaint, Lavigne reached out to Howard Brand ("Brand") either that same day or the next day. Affidavit of Joe Lavigne, ¶ 3. Brand is and was the Chief Executive Officer of C6-Zero, LLC ("C6-Zero"). *Id*. Lavigne was an investor in Brand Technologies Corporation. Brand told Lavigne that Michael Kuehner ("Kuehner") would be representing Brand, C6-Zero, several related entities, and Tim Dore ("Dore"). *Id*., ¶ 4. Brand told Lavigne that Kuehner would be representing Lavigne. *Id*., ¶ 4. Brand told Lavigne that the case was going to be taken care of and that Kuehner would handle it. *Id*., ¶ 5. Over the course of

1

the next year, Lavigne brought up the subject of this case with Brand multiple times and, each time, Brand assured Lavigne that Kuehner was taking care of it. *Id*., ¶ 6.

5. Lavigne did not retain counsel in this matter nor did he seek to independently file a responsive pleading as, per Brand's assurances, Lavigne believed he would be represented by the same counsel as Brand, C6-Zero, the other related entities, and Dore. *Id*., ¶ 7.

6. Kuehner ultimately entered an appearance on behalf of 16 parties to the case, including: Brand; Dore; C6-Zero; C6-Zero Iowa, LLC; C6-Zero Holdings, LLC; Brand Technologies Corporation; Dore Law Group, LLC; Brandlich Assets, LLC; Brandlich Construction, LLC; Brandlich Energy Solutions, LLC; Brandlich Energy Solutions Houston, LLC; Brandlich Energy Solutions San Antonio, LLC; Brandlich Energy Solutions Casper, LLC; Brandlich Energy Solutions Oregon, LLC; Brandlich Energy Solutions San Joaquin; and Brand Technologies, LLC. Kuehner did not enter an appearance on behalf of Lavigne.

7. Several of the Defendants represented by Kuehner filed their Answer to the Complaint on December 12, 2024. (Doc. No. 52). Several other Defendants represented by Kuehner filed a Motion to Dismiss in response to the Complaint on that same date. (Doc. No. 53). Lavigne was not included as a party on either of these filings.

8. Washburn filed her *Motion for Entry of Default Against Defendants Joe Lavigne and Brand Technologies Corporation* ("Motion for Default") on January 20, 2025. (Doc. No. 77). Since Lavigne was unrepresented, he was not made aware of this filing until November 2025. Affidavit of Joe Lavigne, ¶ 15. The Motion for Default was granted by the clerk of this Court on January 21, 2025. (Doc. No. 21).

9. Washburn filed her Motion for Default Judgment Against Defendant Joe Lavigne and Brand Technologies Corporation ("Motion for Default Judgment") on January 22, 2025. (Doc.

2

No 80). This Court denied the Motion for Default Judgment without prejudice on March 21, 2025 (Doc. No. 122).

10. Washburn filed her *Second Amended Complaint with Jury Demand* ("Second Amended Complaint") against Lavigne and other Defendants on May 28, 2025. (Doc. No. 147). Defendants were required to file a responsive pleading to the Second Amended Complaint by June 17, 2025.

11. Lavigne was never served with the Second Amended Complaint. Affidavit of Joe Lavigne, ¶ 8. Washburn did not file any proof of service of the Second Amended Complaint. Upon information and belief, Washburn did not seek to personally serve Lavigne with the Second Amended Complaint despite the fact that Washburn knew no attorney had entered on Lavigne's behalf and he would not be made aware of its filing. *See Stokes v. Hacker*, 309 F.R.D. 472, 475 (N.D. Iowa 2015) (court notes that plaintiff's counsel has a duty to serve pleadings on all parties to the case and electronic service is insufficient means of service if a party has not entered an appearance in that case).

12. On November 2, 2025, Lavigne was served with a subpoena produced by Washburn (the "Subpoena"). Affidavit of Joe Lavigne, ¶ 9.

13. On November 4, 2025, Lavigne reached out to Kuehner by email stating that he had received the Subpoena and he needed instruction on how to handle it. *Id*., ¶¶ 10-14. Kuehner replied that day to schedule a discussion later in the week, but no discussion occurred. *Id*. Lavigne again reached out to Kuehner on November 11 seeking instruction. *Id*. Kuehner replied to Lavigne on November 12 and asked the Subpoena deadline. *Id*. Lavigne responded to Kuehner on November 13 and stated that he was not going to do anything with the Subpoena until he received instruction for Kuehner. *Id*. Kuehner responded later that same day that he was not Lavigne's

attorney so he would not advise Lavigne on a response to the Subpoena. *Id*. Lavigne reached out to an attorney who had represented him on unrelated matters seeking guidance the next day. *Id*., ¶ 15.

14. Lavigne did not learn that a default had been entered against him in the instant case until November 14, 2025. Affidavit of Joe Lavigne, ¶ 15.

15. Lavigne set out to retain counsel to appear on the case so he could move to have the default set aside as soon as he learned of the default. *Id*., ¶ 16.

16. In order to represent Lavigne in this Court, Counsel for Lavigne had to seek sponsorship from a local attorney in order to gain admission *pro hac vice*. Counsel filed its entries of appearance in this case on December 18, 2025.

17. A court may set aside an entry of default or default judgment "[f]or good cause shown." Fed.R.Civ.P. 55(c). Relief from default generally requires a lesser showing of excuse than relief from a default judgment, although the factors considered for each are generally the same. *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). "There is a 'judicial preference for adjudication on the merits,' … and it is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits." *Id*. at 784 (quoting *Oberstar v. F.D.I.C.*, 987 F.2d 494, 504 (8th Cir.1993)). Courts review three factors when determining whether to set aside a default: 1.) the blameworthiness or culpability of the movant, 2.) whether the movant has a meritorious defense, and 3.) whether the plaintiff would be prejudiced if the default were excused. *Id*. at 784.

18. In assessing the blameworthiness or culpability, the court will assess whether a movant's failure to file a timely responsive pleading was an intentional delay or disregard for deadlines and procedural rules, or whether it was only an unintentional failure to meet pleading or

other deadlines. *See Fraserside IP L.L.C. v. Youngtek Sols. Ltd.*, 796 F. Supp. 2d 946, 955 (N.D. Iowa 2011) (court allowed movant to set aside default because movant's failure to timely respond to summons and complaint was due to negligence rather than intentional disregard for the court or its deadlines). This standard is less stringent than the standard for excusable neglect found in Rule 60(b)(1), which itself includes "late filings caused by inadvertence, mistake or carelessness[.]" *See Johnson*, 140 F.3d at 784. When analyzing a movant's culpability or blameworthiness, the court will consider whether the movant appeared to be acting in good faith and how quickly the movant attempted to remedy the default after first learning of it. *Johnson*, 140 F.3d at 784.

19. Lavigne believed in good faith that he was represented by Kuehner in the instant case and that all pleading requirements had been satisfied. Lavigne inquired into the progress of this case multiple times with Brand, who, upon information and belief, coordinates Kuehner's defense of the majority of the Defendants in this case. Brand assured Lavigne that the case, and Lavigne's defense, was being handled by Kuehner and Lavigne had no reason to suspect otherwise. Lavigne did not learn that Kuehner was not representing him until he read the email from Kuehner stating the same on November 14, 2025. Furthermore, Lavigne did not learn that a default had entered against him until that time. Lavigne immediately sought to retain counsel in this matter and to have his default set aside. At least one previous case in the Northern District of Iowa analyzed a motion to set aside a default predicated on the movant's mistaken belief that he would share counsel with other corporate co-defendants. *Mackie v. U.S. Mfg., Inc., 219 F.R.D. 639 (N.D. Iowa 2004).* The fact pattern asserted by the movant in *Mackie* is similar enough to the instant case that it merits excerpt here:

> [Plaintiff] filed her Complaint on July 7, 2003. Shortly thereafter, [Movant] claims that Bill DeJong, an employee of U.S. Manufacturing and Global Resources, called [Movant] on the telephone and informed him that he had given [Movant's] address to someone who was going to be delivering a "package" related to [Plaintiff]. Movant claims that DeJong told him not to worry about the situation with [Plaintiff] because "things were under control"

5

and it would be approximately two years "before anything happened." DeJong also gave [Movant] the name of U.S. Manufacturing's attorney Sharon Malheiro. [Movant] argues that because of this conversation, he believed that U.S. Manufacturing or Global Resources would handle his case and there was no need for him to take any action….

*Id.* at 640-1. Upon review after a motion to set aside the default was filed, the court found that there was little indication the movant was culpable. *Id*. The court reasoned the movant did not intentionally ignore the complaint, rather "he believed in good faith that he did not have to do anything because U.S. Manufacturing or Global Resources would take care of his defense." *Id*. The court also noted how quickly the movant worked to retain counsel once he learned there had been a finding of default. *Id*. Movant's motion to set aside their default was granted. *Id*.

20. To determine whether a "meritorious defense" exists, the court will examine "whether the proffered evidence would permit a finding for the defaulting party." *Stephenson v. El–Batrawi*, 524 F.3d 907, 914 (8th Cir.2008); *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir.1994) ("A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis."). Essentially, the court assesses whether there is a possibility that the outcome after trial would be contrary to the result achieved by default. *Stephenson*, 524 F.3d at 914 (citing *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir.1988)); *Fraserside*, 796 F. Supp. at 957 ("a 'meritorious defense' is shorthand for a defense which raises a serious question about the propriety of the default.").

21. Lavigne's role as alleged in the Third Amended Complaint could best be described as passive. Of the 25 appearances of Lavigne's name in the body of the 81-page Third Amended Complaint, about a dozen of these appearances are simply other parties allegedly telling things to Lavigne or other parties allegedly discussing the prospect of telling things to Lavigne. (Doc. No.

194). Many of the remaining allegations mentioning Lavigne are either jurisdictional in nature or are intended simply to describe Lavigne's relationship to C6-Zero. Only a single paragraph of the Complaint alleges any active misconduct by Lavigne, and this alleged misconduct was directed toward "new investors" rather than Washburn herself. See Third Amended Complaint, ¶¶ 412.[1] Lavigne is, at most, a bit player in claims alleged by Washburn. It is unclear what role, if any, Lavigne had in the misconduct alleged against other Defendants. Furthermore, several of the claims alleged against all Defendants are facially deficient as applied to Lavigne. For example, Washburn alleged a claim of Fraudulent Misrepresentation against Lavigne in Count III. Third Amended Complaint, ¶¶ 501-509. However, the only representation Washburn alleged Lavigne made to her in the Third Amended Complaint is that he and three other individuals, "held themselves out as owners of C6-Zero entities." *Id*., at ¶ 529. It seems unlikely that Washburn is alleging this is an actionable misrepresentation and there are no other allegations of a representation made by Lavigne in the Complaint that would satisfy the heightened particularity requirements for claims of fraud. Lavigne has a substantially likelihood of prevailing against several of Washburn's claims at the pleading stage, much less if these claims are tried on the merits. Consequently, Lavigne possesses a meritorious defense and will demonstrate the merit of these defenses further if he is permitted to file a responsive pleading.

22. With regards to prejudice, "[e]ntry of default raises no protectable expectation that a default judgment will follow." *Johnson*, 140 F.3d at, 785. "[D]elay alone, or the fact the defaulting party would be permitted to defend on the merits, are insufficient grounds to establish the requisite prejudice to the plaintiff." *Stephenson*, 524 F.3d at 915 (citing *Johnson*, 140 F.3d at

---

[1] Even in this single paragraph of the Third Amended Complaint, Lavigne's name only appears among a list of other allegedly malfeasant Defendants and it is unclear what part Lavigne is supposed to have actually had in the misconduct itself.

785). "Setting aside a default must prejudice plaintiff in a more concrete way, such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" *Johnson*, 140 F.3d at 785 (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir.1990).

23. Washburn filed her Third Amended Complaint and Demand for Jury Trial ("Third Amended Complaint") on December 4, 2025. (Doc. No. 194). Although Lavigne has not been formally served with the Third Amended Complaint, the deadline to file a responsive pleading for other Defendants who were served with the Third Amended Complaint is December 18, 2025. Washburn has suffered no actual prejudice due to Lavigne's previous failure to file a responsive pleading. The Court denied Washburn's Motion for Default Judgment against Lavigne, reasoning it was premature and would remain premature until the resolution of all claims against similarly situated Defendants. (Doc. No. 122). Additionally, the discovery deadline in this case is not until May 1, 2026 (Doc. No. 165) and there is no reason to believe Lavigne's delay in filing a responsive pleading has led to the "loss of evidence" or would create "increased difficulties in discovery[.]" *See Johnson*, 140 F.3d at 785. The parties have yet to exchange Rule 26 disclosures. The instant case is still in its relatively early stages and no "opportunities for fraud and collusion" are apparent from Lavigne's entrance into the case at this time. *Id*.

24. Lavigne's delay in entering the instant was caused by mistake rather than any intentional disregard for the Court or case deadlines. Furthermore, Lavigne has multiple meritorious defenses against the claims alleged by Washburn, and Washburn would not be prejudiced by this Court setting aside Lavigne's default. Consequently, Lavigne has shown good cause to have the default entered against him set aside. *See Johnson*, 140 F.3d 781; *Fraserside*, 796 F. Supp. 2d 946; *Mackie*, 219 F.R.D. 639; *Stokes*, 309 F.R.D. 472.

WHEREFORE, Defendant respectfully requests this Court:

1. Set aside the finding of Default against Lavigne;

2. Permit Lavigne to file a responsive pleading to the Third Amended Complaint.

3. Any other relief this Court deems just and proper.

Respectfully submitted on December 18, 2025.

*/s/ Paul L. Vorndran*
Paul L. Vorndran, Atty No. 22098
Benjamin M. Brown, Atty No. 51391
Jones & Keller, P.C.
1675 Broadway, 26th Floor
Denver, CO 80202
Telephone: (303) 573-1600
Fax: (303) 573-8133
Email: pvorndran@joneskeller.com
      bbrown@joneskeller.com
*Attorneys for Joe Lavigne*

*/s/ John S. Cutler*
John S. Cutler    AT0010643
Cutler Law Firm
1307 50th Street
West Des Moines, IA 50266
Telephone: (515) 223-6600
Fax: (515) 223-6787
Email: Jcutler@cutlerfirm.com
*Attorney for Joe Lavigne*