# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

TALI WASHBURN,

        Plaintiff,

vs.

C6-ZERO, LLC, et al.,

        Defendants.

No. C24-67-LTS-KEM

**MEMORANDUM
OPINION AND ORDER**

## I. INTRODUCTION

This case is before me on a motion (Doc. 198) to set aside default entry and partial motion (Doc. 203) to dismiss filed by defendant Joe Lavigne. Plaintiff Tali Washburn has filed resistances (Docs. 213, 220) and Lavigne has filed a reply (Doc. 216) in support of the motion to set aside default entry. Oral argument is not necessary. Local Rule 7(c).

## II. PROCEDURAL HISTORY

On July 12, 2024, Washburn filed a pro complaint (Doc. 1) against multiple defendants, including Joe Lavigne. On September 2, 2024, she filed an amended complaint (Doc. 5) through counsel. On November 26, 2024, Washburn filed proof of service (Doc. 37) as to Lavigne, indicating he had been served personally on November 10, 2024. On January 20, 2025, Washburn moved for default entry against Lavigne, which was granted. *See* Docs. 77, 79.

On January 22, 2025, she moved for default judgment as to Lavigne. Doc. 80. On March 21, 2025, I denied the motion for default judgment without prejudice, noting that Washburn had alleged joint and several liability against all defendants, including the defaulting defendants, and that other defendants had appeared and were defending the

action. To avoid inconsistent judgments, I declined to enter judgment by default against Lavigne and the other defaulting defendant, Brand Technologies, noting that Washburn could renew her motion once her claims against the other defendants had been resolved. *See* Doc. 122.

In her third amended complaint (Doc. 194), Washburn alleges she was an employee of defendant C6-Zero, LLC, beginning on March 15, 2020, and ending with her wrongful termination on July 15, 2022. She alleges that defendants are alter egos of each other and failed to pay her wages in violation of the Iowa Wage Payment Collection Law (IWPCL). She alleges that Lavigne is an investor in C6-Zero, C6-Zero Iowa and C6-Zero Holdings and a member of the board of directors of C6-Zero. Doc. 194 at 10. She alleges Howard Brand is a member/manager and officer/director of C6-Zero, LLC, C6-Zero Iowa, LLC, C6-Zero Holdings, LLC and other affiliated entities. *Id.* Washburn alleges the following counts against all defendants:

Count I – wage claims under Iowa Code Chapter 91A

Count II – breach of contract

Count III – fraudulent misrepresentation

Count IV – civil conspiracy

Count V – punitive damages

Count VI – contract reformation (fraud)

Count VII – alter ego liability

Count VIII – joint and several liability

Count IX – quantum meruit

Count X – conversion

Count XI – unjust enrichment

Doc. 194.

Lavigne seeks dismissal of all counts against him except Count VII – alter ego liability. Doc. 203. On October 14, 2025, I entered an order (Doc. 180) granting in part and denying in part a motion to dismiss filed by defendants Abacus Solutions Group,

2

LLC, Buffy Koehn, Christopher Koehn, Shane Pulver and Second-61 LLC.[1]  I granted the motion as to all movants as to Counts I through VI and VIII through X.  With regard to Count VII (alter ego liability), I granted the motion as to defendants Abacus, Buffy Koehn and Second-61 and denied it as to defendants Christopher Koehn and Shane Pulver.

Lavigne has submitted an affidavit (Doc. 198-2) with his motion to set aside default entry, noting that he was served a copy of Washburn's amended complaint in November 2024.  That day or the next, he reached out to Howard Brand, the CEO of C6-Zero, and was told that attorney Michael Kuehner would be representing Brand and other defendants, including Lavigne.  Lavigne states he brought up the case with Brand multiple times throughout the year and Brand assured him that Kuehner was taking care of it.  As such, he was under the impression he was being represented by Kuehner and did not have to retain his own counsel or file a separate responsive pleading.

Lavigne states Washburn served a subpoena on him on November 2, 2025, and he reached out to Kuehner seeking instruction on how to handle it.  Kuehner scheduled a discussion later in the week, which did not occur.  Lavigne followed up on November 11, 2025, again seeking instruction on how to handle the subpoena (with a deadline of November 13, 2025) and Kuehner responded that day that he was not counsel for Lavigne and therefore would not be advising him.  The next day, Lavigne reached out to separate counsel and learned for the first time on November 14, 2025, that he had a default entered against him.  At that point, he secured counsel to respond to these proceedings.

### III.   ANALYSIS

**A.   *Motion to Set Aside Entry to Default***

Under Federal Rule of Civil Procedure 55(c), the court may set aside an entry of default "for good cause shown."  In weighing whether good cause exists, the court should

---

[1] This motion was based on Washburn's second amended complaint (Doc. 147).

consider "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Stephenson v. El-Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008) (quoting *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)). I will examine each of these factors in turn.

### 1. *Blameworthy or Culpable*

Washburn argues that Lavigne's default was willful, as he does not dispute that he was served with the summons and complaint on November 7, 2024. She notes that despite his actual notice, he failed to file a responsive pleading, seek an extension, enter an appearance or verify that counsel had appeared on his behalf for nearly a year. She contends that Lavigne inexcusably relied on assumptions and informal assurances from third parties, which cannot constitute good cause. She further notes that Lavigne has failed to comply with her subpoena.

Lavigne asserts that he believed in good faith he was represented by Kuehner and that all pleading requirements had been satisfied. He states he inquired into the progress of the case on multiple occasions with Brand, who coordinates Kuehner's defense of the majority of defendants in this case. Lavigne relied on Brand's assurances that the case and Lavigne's defense were being handled by Kuehner and he had no reason to believe otherwise. Once he learned on November 14, 2025, that Kuehner was not representing him, Lavigne immediately sought to retain counsel and have the default entry set aside.

While it may have been unwise for Lavigne to rely solely on Brand's representations concerning Lavigne's legal representation in this lawsuit, his actions do not rise to the level of culpability or blameworthiness that shows an intentional disregard for court rules or deadlines. Indeed, Kuehner entered an appearance on behalf of multiple defendants and, given Lavigne's limited alleged role as an investor and/or board member of some of those entities, it was not entirely unreasonable to believe that Kuehner's representation would extend to Lavigne as well. Upon the realization that Kuehner was

4

not in fact representing him, Lavigne acted quickly to retain counsel to represent his interest in this lawsuit. There is nothing to suggest that Lavigne was intentionally avoiding his obligations as a defendant in this case. This factor weighs in favor of setting aside the default entry.

### 2. *Meritorious Defense*

Washburn argues Lavigne has failed to present a meritorious defense because he has not submitted a proposed answer, identified affirmative defenses with supporting facts or explained how Washburn's claims fail as a matter of law as applied to him, including in the pending partial motion to dismiss.

Lavigne argues that his role as alleged in the third amended complaint can best be described as passive. He notes that his name is mentioned 24 times in the 81-page third amended complaint and the majority of substantive allegations involve other parties allegedly telling things to Lavigne or discussing the prospect of telling things to Lavigne. The only allegation of any active misconduct by Lavigne was directed toward new investors, rather than Washburn. *See* Doc. 194 at ¶ 412 ("Upon information and belief, Koehn, Pulver, Buffy, Brand, Lavigne and Dore withheld information about Washburn's back salary, correct pay scale, due and owing back salary, investment stake, and other contractual details from new investors into C6-Zero."). Lavigne argues that several of the claims alleged against all defendants are facially deficient as applied to him.

As discussed in greater detail below in analyzing Lavigne's partial motion to dismiss, I find that he has meritorious defenses. Given that there is a "judicial preference for adjudication on the merits," *see Dayton Elec. Mfg.*, 140 F.3d at 784, this factor weighs in favor of setting aside the default entry.

### 3. *Prejudice to Plaintiff*

Washburn argues that allowing Lavigne to participate in the lawsuit now would be prejudicial because Rule 26 disclosure deadlines have expired, as have the deadlines to

Case 1:24-cv-00067-LTS-KEM    Document 228    Filed 04/02/26    Page 5 of 22

add parties and amend pleadings. She contends Lavigne's discovery could have revealed information that she could have used for such filings.

Lavigne notes that Washburn filed her third amended complaint on December 4, 2025, and has suffered no actual prejudice due to Lavigne's previous failure to file a responsive pleading. He notes the discovery deadline is not until May 1, 2026, and there is no reason to believe that his delay in filing a responsive pleading has led to recognized prejudices such as "loss of evidence" or "increased difficulties in discovery." *See Dayton Elec. Mfg.*, 140 F.3d at 785.

I agree with Lavigne that this case is still at a relatively early stage and Washburn has not identified any concrete prejudice posed by Lavigne's participation at this point. The parties may still exchange Rule 26 disclosures, engage in discovery and seek extensions of deadlines if necessary. Washburn has had numerous opportunities, and has taken advantage of such opportunities, to amend her complaint. Each iteration of her complaint has involved very little alleged wrongdoing by Lavigne such that his absence up to this point could have significantly prejudiced Washburn's development of her case. In any event, she may seek leave of court in the event she finds additional time is necessary to properly seek discovery from him and any related actions. This factor weighs in favor of setting aside the default entry.

Based on the three relevant factors, I find that the entry of default against Lavigne should be set aside and Lavigne permitted to defend this case.

### B. *Partial Motion to Dismiss*

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled

6

to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While factual plausibility is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable legal theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg.*

*Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927, 937 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins. Co.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *McMahon*, 2018 WL 3381406 at *2 n.2. These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

Lavigne seeks dismissal of all claims asserted against him aside from Count VII, alleging alter ego liability. As mentioned above, Lavigne argues that mention of his name

8

in Washburn's third amended complaint is limited to facts that are jurisdictional in nature, intended to describe Lavigne's relationship to C6-Zero to support allegations of alter ego liability or involve things that others told him. Indeed, his name appears in only 24 of the 583 paragraphs. *See* Doc. 194 at ¶¶ 72, 118, 135, 165, 168, 171, 346, 351, 405, 412, 415, 450, 471-75, 478, 529, 538-40, 564, 578. Lavigne argues that Washburn's allegations lack specificity about what Lavigne did to prevent Washburn from receiving her full compensation and other benefits. He asserts the only allegation of active misconduct is that he withheld information regarding Washburn's back salary, correct pay scale, due and owing back salary, investment stake and other contractual details from new investors into C6-Zero. Doc. 194 at ¶ 412. He contends this conduct cannot support a claim by Washburn. I will address each count alleged against Lavigne in turn.

### 1.   *Count I – Wage Claims Under Iowa Code Chapter 91A*

Lavigne argues he cannot be liable under Iowa Code § 91A.2 because he was not Washburn's employer. Washburn argues that Lavigne can be liable as an individual who exercised control over wage payment decisions. She cites allegations that he was a major investor and board-level decisionmaker in C6-Zero, that she was repeatedly told her compensation, royalties and titles required approval from investors such as Lavigne, that her wages were withheld while investors retained equity and control, that her labor preserved C6-Zero's regulatory standing and investor value benefiting investors, that defendants were all experienced businesspeople with significant experience running commercial enterprises and had ample opportunity to pay her through C6-Zero each month but chose not to and that defendants conspired to use companies strictly owned and closely controlled by one another or person funds to pay Washburn for her services to C6-Zero. Doc 194 at ¶¶ 73, 135, 165, 168, 171, 351, 405, 407, 456-61, 494-95, 497, 507, 526, 528, 529. She contends these allegations plausibly establish that Lavigne exercised authority over whether Washburn was paid and that she is not required to prove the extent of that control at this stage.

9

Washburn cites *Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 567 (Iowa 1987), in support of her argument that an employer under Chapter 91A can include individuals who exercise control over wage payment decisions. *Robinson* does not involve a Chapter 91A claim. The section cited by Washburn deals with the reliance element of a fraud claim, whether plaintiffs' fraud judgment was supported by sufficient evidence and whether there was a reasonable basis for determining the amount of damages. *Robinson*, 412 N.W.2d at 567. It is not relevant to the question of what constitutes an employer under Chapter 91A.

"Employer" is defined under Chapter 91A as "a person, as defined in chapter 4, who in this state employs for wages a natural person." Iowa Code § 91A.2. Wages are "compensation owed by an employer for . . . [l]abor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation." *Andrew v. Hamilton Cnty. Pub. Hosp.*, 960 N.W.2d 481, 495 (Iowa 2021) (citing Iowa Code 91A.2(7)(a)). Washburn alleges that C6-Zero has failed to pay her full wages in violation of the IWPCL. *See* Doc. 194 at ¶ 15. She alleges that Lavigne, among others, is an alter ego of C6-Zero and liable for her wages. *Id.* at ¶ 17. Whether Lavigne may be held personally liable for the corporate liabilities of C6-Zero under the alter ego doctrine is not at issue. The question is whether Lavigne can otherwise be held individually liable based on Washburn's allegations, if accepted as true. He cannot. Washburn has not alleged that Lavigne personally employed Washburn such that he could be considered her employer under the IWPCL. Count I against Lavigne will be dismissed.

### 2.    *Count II – Breach of Contract*

Lavigne argues he cannot be liable for breach of contract because he was not a party to Washburn's employment agreement. Washburn argues this ignores her theory of liability, which is that individuals who direct or cause a breach may be liable even absent formal privity. Doc. 220 at 8 (citing *Dier v. Peters*, 815 N.W.2d 1, 7 (Iowa

10

2012)). She relies on the same allegations as to Count I, in addition alleging that Lavigne acted in concert with other controlling investors to suppress payment.

*Dier* does not stand for the proposition advanced by Washburn. Her "theory of liability" is more like a separate cause of action, such as tortious interference with contract, which has not been alleged here. "[O]nly a party to a contract can be guilty of breaching it." *Harbit v. Voss Petroleum, Inc.*, 553 N.W.2d 329, 331 (Iowa 1996). I have previously granted dismissal on this claim in favor of other defendants either because they were not alleged to be members of C6-Zero or because they could be held liable only as a result of alter ego liability. Because any alleged agreement concerning Washburn's salary or other benefits was with C6-Zero, and not Lavigne individually, he is also entitled to dismissal of this claim against him. Count II against Lavigne will be dismissed.

### 3.     *Count III – Fraudulent Misrepresentation*

Lavigne argues there are no allegations that he made any misrepresentations directed toward Washburn. The only representation Washburn identifies from Lavigne is that he and three other individuals "held themselves out as owners of C6-Zero entities." Doc. 194 at ¶ 529. Based on the lack of allegations and the heightened particularity requirements for claims of fraud, Lavigne argues any claim of fraudulent misrepresentation against him fails.

Washburn argues she has alleged that defendants collectively misrepresented, the reasons for nonpayment of wages, the financial condition of C6-Zero and the likelihood

11

of future payment if Washburn continued working.  Doc. 194 at ¶¶ 134-35,[2] 168,[3] 171,[4] 467-75,[5] 529.[6]

To establish fraudulent misrepresentation under Iowa law, a plaintiff must establish each of the following elements:

(1) the defendant made a representation to the plaintiff,

(2) the representation was false,

(3) the representation was material,

(4) the defendant knew the representation was false,

(5) the defendant intended to deceive the plaintiff,

(6) the plaintiff justifiably relied on the truth of the representation,

(7) the representation was the proximate cause of the plaintiff's damages, and

(8) the amount of damages.

*Dier*, 815 N.W.2d at 7.  "Fraudulent misrepresentation is an 'intentional' tort, meaning that it is committed by a party acting with a mental state intending to commit the act in question."  *Mehmedovic v. Tyson Foods Inc.*, 21 N.W.3d 412, 426 (Iowa 2025).

Washburn's third amended complaint lacks sufficient factual allegations against Lavigne that, if accepted as true, would state a claim of fraudulent misrepresentation.

---

[2] These paragraphs relate to a representation made by Koehn, not Lavigne.

[3] This paragraph is based on representations by Brand and Koehn that they did not own C6-Zero outright and had to answer to Odum and investors, including Lavigne.

[4] This paragraph also does not allege any representation made by Lavigne.  It states: "Washburn was successful in navigating her government affairs responsibilities, and in reassuring Lavigne and was told by Brand and Koehn that she had saved C6-Zero and had prevented them from being found in non-performance under agreements with Odum, and investors."

[5] These paragraphs concern representations made by Brand and Koehn to Washburn.

[6] Alleging under Count VII: "Washburn is informed and believes that Odum, Brand, Koehn, Lavigne and Pulver exercise or exercised complete control over C6-entities."  Again, this paragraph contains no representation allegedly made by Lavigne.

12

She does not identify any representation made by Lavigne to Washburn and does not state with particularity the circumstances constituting fraud under Federal Rule of Civil Procedure 9(b). *See Great Plains Trust Co. v. Union Pac. R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (noting a plaintiff must identify the "who, what, when, where, and how: the first paragraph of any newspaper story" regarding the circumstances constituting fraud). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting *Commercial Prop. Invs. Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)). Washburn's allegations are far too vague and conclusory to allege any claim of fraudulent misrepresentation against Lavigne. Count III claim against him will be dismissed.

### 4.    *Count IV – Conspiracy*

Lavigne argues Washburn's allegations regarding Lavigne's participation in a conspiracy are conclusory. *See* Doc. 194 at ¶ 511 ("[t]here was an agreement or understanding between two or more Defendants to effect a wrong against or injury upon [the Plaintiff.]"). Lavigne argues this does not indicate which defendants made this agreement or came to this understanding, when the agreement or understanding took place or what the agreement or understanding entailed. He argues the third amended complaint fails to indicate when, how or why Lavigne used any alleged managerial powers over C6-Zero to commit any tortious acts against Washburn.

Washburn argues that a breach of contract claim may serve as the underlying action in a civil conspiracy and notes she has pleaded unified control by Lavigne and other investors. Doc. 194 at ¶¶ 351, 405, 526, 529.

Under Iowa law, "[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful." *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 172 (Iowa 2002) (citing *Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 232 (Iowa

13

1977)).  "Civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy [that] give rise to the action." *Id.*  "Thus, conspiracy is merely an avenue for imposing vicarious liability on a party for the wrongful conduct of another with whom the party has acted in concert." *Id.*  Iowa courts have recognized a breach of contract claim as the underlying action to a claim of civil conspiracy.  *See All Energy Corp. v. Energetix, LLC*, 985 F. Supp. 2d 974, 994 n.10 (S.D. Iowa 2012) (citing cases).

I have already determined that Washburn's claim of breach of contract against Lavigne fails.  Because Washburn has failed to state a claim for the action underlying Count IV, Count IV against Lavigne must be dismissed.  *See Shannon v. Gaar*, 6 N.W.2d 304, 307 (Iowa 1942) ("Where, however, the parties are not liable severally for causing the breach of a contract, they are not liable jointly by reason of the allegation of conspiracy.").

### 5.    *Count V – Punitive Damages*

Lavigne argues Washburn's claim for punitive damages against him fails because Washburn does not allege any willful or wanton conduct by Lavigne.  Washburn argues that Lavigne's refusal to pay Washburn constituted a willful and wanton disregard for her rights and that punitive damages are not subject to a motion to dismiss so long as there are surviving claims.

"[P]unitive damages do not constitute a distinct 'cause of action.'  Rather, they are a form of relief incidental to the main cause of action." *In re Est. of Vajgrt*, 801 N.W.2d 570, 574 (Iowa 2011).  Punitive damages may be awarded if the plaintiff establishes by a preponderance of clear and convincing evidence that a defendant acted with "willful and wanton disregard for the rights or safety" of others.  Iowa Code § 668A.1.  The Iowa Supreme Court has defined "willful and wanton" to mean that the defendant "has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would

14

follow, and which is usually accompanied by a conscious indifference to the consequences." *Mercer v. Pittway Corp.*, 616 N.W.2d 602, 617 (Iowa 2000) (quoting *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 919 (Iowa 1990)).

Washburn does not allege any conduct by Lavigne that could rise to the level of willful and wanton. As noted above, the refusal to pay wages is a claim against C6-Zero, and not any individual defendant (except perhaps through application of alter ego liability). There are no surviving underlying claims that would support an award of punitive damages against Lavigne personally. As such, Washburn's claim for punitive damages against Lavigne will be dismissed.

### 6. *Count VI – Contract Reformation*

Lavigne argues, similar to Washburn's breach of contract claim, that there are no allegations that Lavigne was a party to the Employment Agreement or that he participated in the formation of that agreement or any other agreement.

Washburn argues reformation is warranted when there is a mistake in the expression of an agreement. She seeks to enforce and reform the parties' May through July 2021 oral agreement that was formed between her and Koehn, and referenced in emails and phone calls and agreed to by the parties, but never memorialized in writing. As to Lavigne, Washburn relies on her allegations that Lavigne was a major investor and board-level decisionmaker in C6-Zero and that there was unified control by Lavigne and other investors. *See* Doc. 194 at ¶¶ 72, 351, 405, 529.

"The law is well settled that a court of equity may reform an instrument when it fails to express the agreement of the parties, either because of mistake, inadvertence, or accident." *Fink v. Lawson*, 30 N.W.3d 582, 592 (Iowa 2026) (quoting *Merle O. Milligan Co. v. Lott*, 263 N.W. 262, 263 (1935)). "Where the writing admittedly does not correctly recite all the terms of the contract of the parties, it may be reformed for mutual mistake." *Id.* Before the court can reform a writing, "it must clearly appear that the minds of the contracting parties did not meet upon the proposition expressed in writing,

15

and that the actual contract was other and different from that expressed in writing." *Id.* at 593. "In reforming the instrument, the court does not change the agreement between the parties, but changes the drafted instrument to confirm to the real agreement." *Id.* (quoting *Wellman Sav. Bank v. Adams*, 454 N.W.2d 852, 855 (Iowa 1990)).

Washburn's allegations fail to state a claim of contract reformation against Lavigne. In response to a previous motion to dismiss filed by other defendants, Washburn clarified that this claim was based on Koehn creating an oral agreement with Washburn that incorporated the terms of her original employment offer and new terms discussed and agreed through several phone calls and emails.[7] *See* Doc. 168 at 18-19; Doc. 194 at ¶¶ 408-411. She does not allege Lavigne knew about this agreement, let alone was a part of it, approved it or that his approval was required. She alleges that "Brand, Kohen [sic] and Pulver exercised control over C6 Zero and thus control over Washburn's salary." Doc. 194 at ¶ 406. Washburn does not allege that her oral contract was with Koehn individually, but that Koehn acted on behalf of C6-Zero. *See* Doc. 194 at ¶¶ 408-411. As such, her claim of contract reformation is properly directed against C6-Zero, not individual defendants such as Lavigne.

To the extent Lavigne could be liable at all, it would only be through application of alter ego liability as Washburn does not otherwise allege any involvement by Lavigne.

---

[7] Notably, this is not clear from Washburn's third amended complaint, which alleges the following on her claim of contract reformation after incorporating all other paragraphs of the complaint:

518. There was a valid agreement between the parties expressing their real intentions.

519. The written instrument failed to express the real intentions of the parties; and

520. This failure was due a [sic] unilateral mistake accompanied by fraud or inequitable conduct by Defendants.

Doc. 194 at 72.

Because Lavigne was not individually a party to the alleged oral agreement on which Washburn bases this claim, her claim of contract reformation against Lavigne will be dismissed.

### 7.    *Count VIII – Joint and Several Liability*

Lavigne argues that Washburn has not asserted any viable tort claims against him, precluding joint and several liability.  Washburn relies on her allegations that Lavigne exercised authority over whether her back salary would be paid, coordinated suppression of her wages and that management repeatedly told her that her compensation, royalties and titles required approval from investors including Lavigne.  Doc. 194 at ¶¶ 135, 168, 473-74.  Additionally, she relies on the allegations that Lavigne was a major investor and board-level decisionmaker in C6-Zero and that there was unified control by Lavigne and other investors.  *See id.* at ¶¶ 72, 194, 351, 405, 526, 529.

As a result of this order, Washburn will have no surviving tort claims against Lavigne.  As I noted in my order (Doc. 180) on a motion to dismiss filed by other defendants, her claim of alter ego liability is inconsistent with a claim of joint and several liability as to individual defendants.  She has also failed to allege that Lavigne had knowledge of the representations Koehn made to Washburn such that he could be held jointly and severally liable for any fraudulent misrepresentation made by agents of C6-Zero.  Washburn's allegations against Lavigne all relate to an alter ego theory of liability based on her claims against C6-Zero.  Therefore, her claim of joint and several liability against Lavigne necessarily fails and will be dismissed.

### 8.    *Count IX – Quantum Meruit*

Lavigne argues Washburn has not stated a claim of quantum meruit because she does not allege she provided any services for Lavigne or that there was any expectation of compensation for her services from Lavigne.  He notes the only interaction Washburn alleges between herself and Lavigne is that Brand asked Washburn to contact Lavigne

after Brand's arrest to reassure Lavigne that Washburn would be managing the public relations crisis and dealing with regulatory officials. Doc. 194 at ¶ 165, 171. Lavigne argues these allegations do not suggest any sort of offer, acceptance or consideration exchanged between Washburn and Lavigne. In addition, Lavigne was not a party to the Employment Agreement and did not participate in its formation. *See id.* at ¶ 379 ("Brand, Koehn and Pulver caused C6-Zero to execute the Employment Agreement with Washburn on behalf of C6-Zero.").

Washburn relies on allegations that Lavigne enjoyed a shared financial benefit from Washburn's labor and he was a major investor and board-level decisionmaker in C6-Zero. "Under Iowa law, for a plaintiff to recover in quantum meruit, it must show: '(1) plaintiff performed under circumstances reasonably indicating the performance was for the benefit of defendant and not another person; (2) plaintiff performed under circumstances reasonably indicating payment was expected; and (3) the services provided by the plaintiff were beneficial to the defendant.'" *AT&T Corp. v. Aventure Comm. Tech., LLC*, 4:07-CV-43, 2018 WL 4278501, at *4 (S.D. Iowa July 11, 2018) (quoting *Iowa Network Servs., Inc. v. Qwest Corp.*, 385 F. Supp. 2d 850, 910 (S.D. Iowa 2005), *aff'd*, 466 F.3d 1091 (8th Cir. 2006)). "[T]he preferred phrase for asserting such a cause of action is an implied-in-fact contract." *Iowa Waste Systems, Inc. v. Buchanan Cnty.*, 617 N.W.2d 23, 29, n.4 (Iowa Ct. App. 2000).

Washburn's allegations are insufficient to state a claim of quantum meruit against Lavign, as she does not allege he ever assented to pay for any services rendered by Washburn. Washburn alleges only that she had an agreement to perform services for, and to be paid by, C6-Zero. Any assurances regarding payment for services or agreements to be paid were made by other individuals on behalf of C6-Zero without any allegations that Lavigne was aware of or participated in such assurances. There are no alleged actions by Lavigne that could be viewed as creating an implied-in-fact contract with Washburn. Washburn's claim of quantum meruit against Lavigne will be dismissed.

18

### 9. Count X – Conversion

Lavigne argues Washburn does not allege he took any action to prevent her from receiving her salary or benefits. He notes that Washburn alleges Brand, Koehn and Pulver were all members, directors and officers and held controlling interests in C6-Zero and that Second 61 and Abacus also held controlling interests in C6-Zero. Doc. 194 at ¶ 558. As for Lavigne, she argues he "exercised control over C6-Zero to the extent that he controlled operations and decision-making regarding Washburn's salary." *Id.* at ¶ 564. Lavigne notes that Washburn alleges earlier in the third amended complaint that "she [was] tired of being told that Odum and Lavigne [were] preventing Brand and Koehn from getting [Plaintiff] her updated agreement, royalty agreement, back salary, and benefits." *Id.* at ¶ 478. Lavigne also notes there are no allegations that Brand or Koehn actually needed or sought approval for these concessions from C6-Zero investors, such as Lavigne, nor that Lavigne ever denied this approval or obstructed compensation to Washburn. In other words, she alleges only that Brand and Koehn made certain representations to her about their authority. Unlike other defendants, she does not allege that Lavigne even knew about Washburn's claims regarding unpaid compensation until the filing of the lawsuit. Finally, Lavigne argues Washburn's conversion claim must fail as to all defendants because a conversion claim cannot be based on a failure to pay salary to accordance with an express or implied contract.

Conversion is "the wrongful control or dominion over another's property contrary to that person's possessory right to the property." *Blackford v. Prairie Meadows Racetrack & Casino, Inc.*, 778 N.W.2d 184, 188 (Iowa 2010). "In general, no conversion claim exists where the dispute arises solely out of contractual obligations." *Larew v. Hope Law Firm, P.L.C.*, 977 N.W.2d 47, 63 (Iowa 2022). A conversion claim requires proof that plaintiff's (1) ownership or other possessory right in certain property exceeded the defendant's rights in the property, (2) that one or more of the defendants exercised "dominion or control" over the property inconsistent with his possessory right in it, and (3) that he suffered damages as a result." *Id.* at 60.

19

Because Washburn's alleged property interest is based on either her initial Employment Agreement with C6-Zero or the subsequent oral agreement she reached with Koehn, her dispute arises out of a contractual obligation with C6-Zero. As such, her claim of conversion against Lavigne fails and will be dismissed.

### 10.    Count XI – Unjust Enrichment

"The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." *State ex rel. Palmer v. Unisys. Corp.*, 637 N.W.2d 142, 154 (Iowa 2001). A claim of unjust enrichment under Iowa law is comprised of the following three elements: "(1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *Id.* at 154-55.

Lavigne argues Washburn does not allege he was enriched by withholding Washburn's salary or benefits. Any benefit she alleges is to C6-Zero. To the extent there is any implied benefit to Lavigne, he argues Washburn has failed to explain how any such benefit is unjust.

Washburn relies on the following allegations:

135.    Thus, if a C6-Zero investor who gave $150,000.00 was promised a royalty in Iowa and the opportunity to buy in to the next states, plus repayment of principal plus interest, then Washburn would also be repaid her principal (in this case back salary), plus interest, plus the same royalty investors (such as Shane Pulver and Joe Lavigne), were receiving.[8]

168.    Brand and Koehn then changed their story, telling Washburn that they did not own C6-Zero outright, and that they had to answer to Odum, and investors, including Lavigne.

---

[8] The context of this allegation is that "Koehn . . . agreed to treat Washburn's back salary as a dollar-for-dollar investment at the same rate as investors' money was treated." Doc. 194 at ¶ 134.

473. In May 2021, in response to her request to be given a title more in keeping with her role, as well as a royalty, Washburn is told that Brand cannot issue titles and royalties because Odum and Lavigne own the company.

474. In response to Washburn's requests for her back salary and more, Brand and Koehn told Washburn that they did not own the Company outright, and that they had to answer to Marvin Odum, Joe Lavigne, and others. They claimed Odum needed to approve the terms of her royalty payments from the Company, and Brand claimed Odum was hands-on in managing the Company's finances.

Doc. 194.

As noted above, Washburn alleges that her employment agreement was with C6-Zero and that C6-Zero owed her salary. While she alleges that Lavigne exercised control over C6-Zero, she does not allege that he, personally, was enriched by failing to pay her salary. While Lavigne may have been unjustly enriched through application of the alter ego doctrine, he was not directly unjustly enriched by Washburn's continued work for C6-Zero without payment of her full salary. Washburn has not pointed to any allegations that she performed work directly for Lavigne such that he received a benefit at Washburn's expense. As such, Count XI will be dismissed against Lavigne.

## IV. CONCLUSION

. For the reasons stated herein:

1. Lavigne's motion (Doc. 198) to set aside the default entry is **granted**.

2. Lavigne's partial motion (Doc. 203) to dismiss is **granted**. Counts I through VI and Counts VIII through XI against Lavigne are hereby **dismissed.** This case shall proceed against Lavigne on Count VII only.

**IT IS SO ORDERED** this 2nd day of April, 2026.

_____

Leonard T. Strand
United States District Judge