# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

TALI WASHBURN,

        Plaintiff,

vs.

C6-ZERO, LLC, et al.,

        Defendants.

No. C24-67-LTS-KEM

**MEMORANDUM
OPINION AND ORDER**

## I.  INTRODUCTION

This matter is before me on a motion (Doc. 232) to dismiss filed by defendant Marvin Odum.  Plaintiff Tali Washburn has filed a resistance (Doc. 237) and Odum has filed a reply (Doc. 240).  Oral argument is not necessary.  *See* Local Rule 7(c).

## II.  BACKGROUND

This lawsuit, which invokes the court's diversity jurisdiction under 28 U.S.C. § 1332, involves an employment dispute.  Washburn alleges she was an employee of defendant C6-Zero, LLC, beginning on March 15, 2020, and ending with her wrongful termination on July 15, 2022.  She alleges that defendants are alter egos of each other and failed to pay her wages in violation of the Iowa Wage Payment Collection Law (IWPCL).  In her Third Amended Complaint, which names over 20 defendants (plus John Doe defendants), Washburn asserts the following claims against every defendant:

    Count I – wage claims under Iowa Code Chapter 91A

    Count II – breach of contract

    Count III – fraudulent misrepresentation

    Count IV – civil conspiracy

    Count V – punitive damages

Count VI – contract reformation (fraud)

Count VII – alter ego liability

Count VIII – joint and several liability

Count IX – quantum meruit

Count X – conversion

Count XI – unjust enrichment

Doc. 194. Odum seeks dismissal of all counts against him.

### III. APPLICABLE STANDARDS

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While factual plausibility is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable legal theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927, 937 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins. Co.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *McMahon*, 2018 WL 3381406 at *2 n.2. These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a

3

pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

## IV. DISCUSSION

Odum seeks dismissal of all claims against him for failure to state a claim. Washburn acknowledges that the court has previously dismissed Counts I through VI and VIII through XI against other individual defendants and acknowledges that the same grounds may exist to dismiss those direct claims against Odum. Therefore, she focuses her resistance on Count VII, alter ego liability, maintaining that Odum should be held personally responsible for Counts I through VI and VIII through XI against C6-Zero through application of the alter ego doctrine.

I agree that Washburn's allegations fall short of alleging stand-alone or direct claims against Odum on Counts I through VI and VIII through XI, for the reasons articulated in Odum's motion (Doc. 232) and in my previous rulings dismissing those claims against individual defendants. *See* Docs. 180, 228. Therefore, the only count at issue is Count VII, based on alter ego liability. As discussed in a previous order, the Southern District of Iowa has observed there are generally two scenarios in which the Iowa Supreme Court has recognized that piercing the corporate veil or applying alter ego liability is appropriate. *See United States v. Huyser*, 4:23-cv-144, 2024 WL 5054962, at *22 (S.D. Iowa Sept. 30, 2024). The first is when there is a unity of interest and identity between the owner and entity that the corporate entity and person cannot be separated.

4

*Id.* The second is when the entity was formed without sufficient capital or was solely or predominantly engaged in fraudulent activity. *Id.* (citing *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 941 (8th Cir. 2007) and *C. Mac Chambers Co. v. Iowa Tae Kwon Do Acad., Inc.*, 412 N.W.2d 593, 598 (Iowa 1987)).

The Iowa Supreme Court has explained as follows with regard to piercing the corporate veil:

> A court may disregard a corporate structure by piercing the corporate veil only under circumstances 'where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *C. Mac Chambers Co. v. Iowa Tae Kwon Do Acad., Inc.*, 412 N.W.2d 593, 597 (Iowa 1987) (quoting *Briggs*, 262 N.W.2d at 810).
>
> The burden is on the party seeking to pierce the corporate veil to show the exceptional circumstances required. *C. Mac Chambers*, 412 N.W.2d at 598. Factors that would support such a finding include (1) the corporation is undercapitalized; (2) it lacks separate books; (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation; (4) the corporation is used to promote fraud or illegality; (5) corporate formalities are not followed; and (6) the corporation is a mere sham." *Id.* (citing *Briggs*, 262 N.W.2d at 810).

*In re Marriage of Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000). This list is not exhaustive, but a guideline. *Boyd. v. Boyd & Boyd*, 386 N.W.2d 540, 544 (Iowa Ct. App. 1986).

Odum argues Washburn fails to state a claim of alter ego liability against him because Odum is not alleged to have been intertwined or essentially the same as C6-Zero and he is not alleged to have an obligation to fund C6-Zero, was not an active participant in corporate affairs and was not in a position to recognize when something was amiss.[1]

---

[1] The parties rely on Iowa law and I agree that Iowa law applies. *See Tyson Fresh Meats, Inc. v. Lauer*, 918 F. Supp. 2d 835, 850-51 (N.D. Iowa 2013) (noting that "[m]ost jurisdictions recognize the internal affairs doctrine whereby 'the law of the state of incorporation' is used to determine 'issues relating to the internal affairs of a corporation."). *See* Doc. 194 at ¶ 21

Washburn argues Odum is not similarly situated to those defendants who have been dismissed from alter ego liability.[2]  She contends that unlike those defendants, Odum approved hiring, controlled or influenced compensation, was hands-on in finances, needed to approve royalty terms and owned or controlled the company with defendant Joe Lavigne[3] and others.

One of Odum's primary arguments is that Washburn's allegations fail to state a claim because many do not allege "facts" related to Odum, but statements that others told her about Odum.  *See* Doc. 194 at ¶¶ 76, 79, 118, 168-71, 236, 320, 457, 459, 466-68, 471-75.  For example, instead of alleging Odum's approval was necessary to hire Washburn, she alleges Koehn told her he needed the approval of Odum and Pulver before she could be hired.  *Id*. at ¶¶ 320, 467.  She also draws heavily on inferences rather than directly alleging Odum's role.  *See id*. at ¶¶ 469-70, 476-81, 485.  The only direct allegations Washburn makes about Odum's role in C6-Zero are the following:

- In Defendants' initial disclosures, Koehn and Pulver provided Plaintiff with a document entitled "C6 Zero Principal Actors" stating that Marvin Odum, the former CEO of Royal Dutch Shell, is an investor and principal actor in this matter.  *Id*. at ¶ 486.

- Also provided by Koehn and Pulver in their initial disclosures is a document entitled "C6 Zero Executive Framing Document" showing Odum as an owner, investor, and executive team member of C6 Zero, LLC.  *Id*. at ¶ 487.

- According to the C6 Zero Executive Framing Document Odum owned twenty percent (20%) of C6 Zero.  *Id*. at ¶ 488.

---

(alleging C6-Zero is a limited liability company formed under the laws of the state of Iowa and was registered and filed with the Iowa Secretary of State on February 2, 2021).

[2] These defendants include Abacus Solutions Group, LLC; Buffy Koehn and Second-61, LLC. *See* Doc. 180 at 5-12.  Washburn did not allege that any of these defendants were members/owners of C6-Zero.

[3] Lavigne did not seek to dismiss Count VII.  All other counts against him have been dismissed. *See* Doc. 228.

- Odum was a control person in C6 Zero as he owned more than ten percent (10%) of C6 Zero and he was in a position to influence the decision-making processes of the corporation as previously identified herein. *Id.* at ¶ 489.

- Washburn is informed and believes that Odum, Brand, Koehn, Lavigne and Pulver exercise or exercised complete control over C6-Zero entities. *Id.* at ¶ 529.

- Odum was listed during the relevant time periods as a member of the executive team of C6 Zero. *Id.* at ¶ 534.

- Odum, during the relevant time periods, was a twenty percent (20%) investor of C6 Zero. *Id.* at ¶ 535.

- Upon information and belief Odum made executive management decisions for C6 Zero to include making hiring decisions related to Washburn. *Id.* at ¶ 536.

- Upon information and belief Odum made capital allocation decisions for C6 Zero. *Id.* at ¶ 537.

- Odum, Brand, Koehn, Lavigne and Pulver have held themselves out as the owners of the C6-Zero entities. *Id.* at ¶ 539.

Odum has attached the two referenced documents to his motion, *see* Docs. 232-2 and 232-3, and argues I may consider them as embraced by the pleadings. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 n.4 (8th Cir. 2003) ("in considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint."). Odum argues these documents do not establish that Odum is a member or manager of C6-Zero as the Executive Framing Document lists Odum as a "to be 5-10% owner" and is also listed under a "Potential C6-Zero Sub company partners Restructuring Current Ownership – As Is." Doc. 232-2 at 5 (emphases added). Odum points out these documents are undated, fail to indicate an author and are not executed company formation documents, such as an operating agreement. I agree that the documents have little bearing on the issue of stating a claim of alter ego liability for the reasons stated by Odum.

7

With regard to alter ego liability based on unity of interest and identity between the owner and entity, Odum argues Washburn has not alleged that he used C6-Zero property as his own or comingled funds, that he is one and the same as C6-Zero, nor that he used C6-Zero as an instrumentality to avoid legal obligations. Odum also notes she has not alleged that he was a member or manager of C6-Zero. Washburn relies on allegations that C6-Zero funds were used for Brand family vehicles, a lake house, another house in Marengo, Brand-related legal fees, Brand-related environmental fines, Brand family travel, food, entertainment and other noncorporate expenses. *See* Doc. 237 at 10 (citing Doc. 194 at ¶¶ 193-95, 188-202, 241, 288, 348-50, 389-92). She cites allegations that other entities paid portions of her salary, health benefits and retirement benefits. *Id.* (citing Doc. 194 at ¶¶ 348, 351-55, 366, 372, 374-75, 394, 497, 406, 408, 413-15). Washburn argues these actions can be tied to Odum based on her allegations that Odum was hands-on in company finances and that Brand and Koehn purportedly had to answer to Odum because they did not own C6-Zero outright. *Id.* (citing Doc. 194 at ¶¶ 168-69, 474, 480).

Washburn's allegations attempting to tie Odum to the comingling of funds and unity of interest and identity with C6-Zero are insufficient to state a claim of alter ego liability against Odum. The allegations she relies on are either conclusory[4] or based on statements others made to Washburn about Odum and not allegations made directly about Odum's role or actions. Accepting these allegations as true, the fact that others told

---

[4] Washburn does allege:

> There exists, and at all times herein mentioned has existed, a unity of interest and ownership between Odum, Brand, Koehn, Lavigne and Pulver on the one hand, and Entity Defendants, on the other hand, such that the requisite degree of individuality and separateness among these Defendants, and each of them, have ceased, and that Odum, Brand, Koehn, Lavigne and Pulver are the alter egos of Entity Defendants, and Entity Defendants are the alter egos of one another.

Doc. 194 at ¶ 538. This allegation does not allege any facts to show a unity of interest between Odum and C6-Zero.

8

Washburn that Odum was hands-on in company finances and that Odum had to approve of Brand's and Koehn's decisions does not equate to accepting as true that Odum was hands-on in company finances or had final approval authority for decisions made by Brand and/or Koehn. To the extent Count VII is based on unity of interest and identity between Odum and C6-Zero, I find that Washburn has failed to state a claim against Odum.

The other basis for alter ego liability is when the entity was formed without sufficient capital or was solely or predominantly engaged in fraudulent activity. Odum argues Washburn fails to state a claim based on this theory of alter ego liability because Washburn has not alleged Odum is a member of C6-Zero and, as a result, has no obligation to provide capitalization. He also notes that Washburn has not alleged he was an officer/owner who had an obligation to know about the day-to-day activities of C6-Zero or that he was an active participant in corporate affairs or in a position to recognize when something was amiss.

Washburn primarily focuses on her allegations of undercapitalization without any reference to the defendants responsible for sufficiently funding C6-Zero. *See* Doc. 237 at 9 (citing Doc. 194 at ¶¶ 144-49, 384-88, 396-97, 416-22, 435). The only allegations she cites with respect to Odum are:

- Brand and Koehn claimed Odum needed to approve the terms of her investment with the Company, and Brand claimed Odum was hands-on in managing the company's finances. Doc. 194 at ¶ 169.

- In response to Washburn's requests for her back salary and more, Brand and Koehn told Washburn that they did not own the Company outright, and that they had to answer to Marvin Odum, Joe LaVigne, and others. They claimed Odum needed to approve the terms of her royalty payments from the Company, and Brand claimed Odum was hands-on in managing the company's finances. *Id.* at 474.

Again, accepting these allegations as true is accepting only that Brand and Koehn told Washburn these things. It is not accepting the truth of what they told her.

In other parts of her Third Amended Complaint, Washburn alleges that as a ten percent owner of C6-Zero, Odum was "in a position to influence the decision-making processes of the corporation as previously identified herein." *Id.* at ¶ 489. She also alleges that along with defendants Brand, Koehn, Lavigne and Pulver, Odum exercised complete control over C6-Zero entities, was a member of the executive team of C6-Zero, made executive management decisions for C6-Zero including hiring decisions related to Washburn and made capital allocation decisions for C6-Zero. *Id.* at ¶¶ 529, 534-37. Odum argues I need not consider allegations based on information and belief because the parties had nearly completed discovery at the time Washburn filed her Third Amended Complaint. Doc. 240 at 2. Odum also argues I need not analyze the six factors in *HOK Sport* because Odum is not alleged to have actively participated in C6-Zero's corporate affairs nor inadequately capitalized C6-Zero. *See* Doc. 240 at 6, n.3.

*HOK Sport* cites *Briggs Transport* for the proposition that "[a]n abuse of the corporate privilege may justify piercing the corporate veil as to persons who actively participate in the conduct of corporate affairs and have provided inadequate capitalization." *HOK Sport, Inc.*, 495 F.3d at 936. In *Briggs Transport*, the Iowa Supreme Court considered whether Martha Voeltz, who was a corporate officer and stockholder of the defendant corporation, could be held personally liable to the plaintiff through piercing the corporate veil. *Briggs Transport Co., Inc. v. Starr Sales Co., Inc.*, 262 N.W.2d 805, 811 (Iowa 1978). The trial court held she could not because the plaintiff had failed to show she had any active part in the incorporation or business of the corporation. *Id.* While the Iowa Supreme Court agreed with the trial court's factual findings relating to Voeltz's role in the corporation, it disagreed that she could not be held personally liable. The Court reasoned:

> an officer and owner of a close corporation is not individually immune from personal liability for actual damages under the doctrine which permits piercing the corporate veil. As a major corporate officer she could not avoid liability by emulating the three fabled monkeys, hearing, seeing and speaking no evil. Nor could she ignore the reality Starr Sales had evaded

10

the most basic aspects of corporate existence. For example, she had a responsibility to know Starr Sales was without initial capital and that corporate books were nonexistent. When the separate entity privilege is denied, as it should be in this situation, it is clear a shareholder or equitable owner who is also a major officer of a close corporation ordinarily cannot escape personal liability.

*Id.* Therefore, active participation and providing inadequate capitalization are not necessarily requirements, at least if the defendant is an officer and owner of a close corporation.

Here, Washburn has alleged that Odum was such an officer and owner. *See* Doc. 194 at ¶ 489 ("Odum was a control person in C6 Zero as he owned more than ten percent (10%) of C6 Zero and he was in a position to influence the decision-making processes of the corporation as previously identified herein."); ¶ 534 ("Odum was listed during the relevant time periods as a member of the executive team of C6 Zero."); ¶ 535 ("Odum, during the relevant time periods, was a twenty percent (20%) investor of C6 Zero."); ¶ 536 ("Upon information and belief Odum made executive management decisions for C6 Zero to include making hiring decisions related to Washburn."); ¶ 537 ("Upon information and belief Odum made capital allocation decisions for C6 Zero."); ¶ 539 ("Odum, Brand, Koehn, Lavigne and Pulver have held themselves out as the owners of the C6-Zero entities."). While the allegations could be more specific, I will not hold Washburn to a higher burden regardless of how far the parties have progressed in discovery, as Odum chose to file his motion as a motion to dismiss rather than a motion for summary judgment.

Washburn has plausibly alleged facts sufficient to state a claim against Odum on alter ego liability. As articulated in prior orders, Washburn has alleged C6-Zero was undercapitalized and failed to maintain separate books, *see* Doc. 180 at 10-12, and while those allegations do not detail any facts suggesting "active participation" by Odum, the same was true for Martha Voeltz in *Briggs Transport*. The Court found that, as a major corporate officer, she could not avoid liability through ignorance of corporate actions

11

Case 1:24-cv-00067-LTS-KEM    Document 244    Filed 08/07/26    Page 11 of 12

undertaken by others.  As such, I decline to dismiss this claim or theory of recovery against Odum at this time.  While the other direct claims against Odum are dismissed (Counts I through VI and VIII through XI), they are dismissed with the understanding that if C6-Zero is found to be liable as to those claims and Washburn proves alter ego liability against Odum, Odum could be held personally responsible for any of those corporate liabilities.

## V.    CONCLUSION

For the reasons stated herein, defendant Odum's motion (Doc. 232) to dismiss is **granted in part** and **denied in part.**  It is **granted** as to Counts I-VI and VIII-XI.  It is **denied** as to Count VII.

**IT IS SO ORDERED** this 7th day of August, 2026.

_____
Leonard T. Strand
United States District Judge

12